## Commonwealth v. Ulrich

C.P. of Berks County, no. 3852/09.

*Douglas A. Rhoads, assistant district attorney,* for Commonwealth at trial.
*Alisa R. Hobart, district attorney,* for Commonwealth on appeal.
*Tim M. Barrouk,* for defendant.

BOCCABELLA, *J.,* October 4, 2010—On December 2, 2009, following an omnibus pretrial hearing in the above captioned matter, this court denied the defendant's motion for suppression of evidence, but granted the

motion for writ of habeas corpus with respect to the charge of fleeing or attempting to elude a police officer,[1] and the matter was listed for trial. On March 9, 2010, after a one (1) day jury trial, the defendant was found guilty of count two (2) driving under the influence of alcohol.[2]

On April 28, 2010, this court sentenced the defendant, Travis Lee Ulrich, to not less than ninety (90) days nor more than five (5) years incarceration in the Berks County jail system and a fifteen hundred dollar ($1,500.00) fine.

On May 5, 2010, the defendant, by and through his counsel, Tim M. Barrouk, Esquire, filed a post-sentence motion, which was denied by this court on May 13, 2010. On June 11, 2010, the defendant, by and through counsel, filed a notice of appeal to the Superior Court of Pennsylvania. On June 18, 2010, this court ordered the defendant as appellant to file a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925. On June 7, 2010, defendant, through his counsel, filed his concise statement. Defendant raises the following issues for appellate review:

1. Whether this honorable court erred by denying the defendant's motion to suppress for lack of probable cause to arrest. Specifically, that the commonwealth failed to produce evidence that it was probable that defendant's mental and physical faculties where impaired to the point that he could not safely operate a motor vehicle.

---

1. 75 Pa. C.S.A. §3733(a).
2  75 Pa. C.S.A. §3802(a)(1).

2.   Whether the Jury's finding of guilt as to the charge of general impairment was not supported by sufficient evidence. Specifically, that the commonwealth failed to produce evidence sufficient evidence [sic] that defendant's mental and physical faculties where impaired to the point that he could not safely operate a motor vehicle.

3.   Whether the jury's finding of guilt as to the charge of general impairment was against the weight of the evidence. Specifically, that the that the [sic] weight of the evidence failed to establish that defendant's mental and physical faculties where impaired to the point that he could not safely operate a motor vehicle.

## FACTUAL SUMMARY

On April 25, 2009, at approximately 11:00 p.m. Officer Christopher A. Cortazzo of the City of Reading Police Department was in the area of North Fifth Street and Crescent Avenue due to a DUI related accident that damaged a fire hydrant and flooded the nearby roadway. Officer Cortazzo had his marked patrol vehicle, with its emergency lights on and tail lights flashing, parked perpendicular to the street in order to block both southbound lanes. The roadblock was intended to be used as a visual indication that the roadway was closed. Officer Cortazzo observed several cars make a u-turn or turn left on Crescent Avenue. However, Officer Cortazzo observed one car, a black Nissan, drive through the water and squeeze past the roadblock. He stated that this was the only car to go beyond the roadblock.

Officer Cortazzo, with his emergency lights already

on and utilizing his siren and fog horn intermittently, attempted to initiate a traffic stop on the black car. Officer Cortazzo followed the black car for several moments and observed no change in speed. Therefore, Officer Cortazzo went around the car and pulled in front before slowing to a stop, to which the black car stopped behind the patrol car. Officer Cortazzo stated that when he passed the black car, the driver, later identified as the defendant, Travis Lee Ulrich, continually looked forward and did not seem to see him. Officer Cortazzo estimated that the distance between the roadblock and where the defendant finally stopped was approximately four hundred (400) to five hundred (500) feet, or about two (2) blocks.

Officer Cortazzo approached the defendant, and after asking for and receiving his license, asked him to go back to the roadblock so that he could reposition his car to block the road again. Officer Cortazzo testified that the defendant did not respond much, had a glazed look over his face, and that he had some initial difficulty turning around before deciding to go back to the roadblock backwards. Officer Cortazzo approached the defendant back at the roadblock and detected an odor of alcohol from the car. Since there was a passenger in the car, Officer Cortazzo asked the defendant to exit the vehicle in order to help locate the source of the smell of alcohol. The defendant denied having anything to drink and stated that he was coming from a concert. However, Officer Cortazzo testified that the defendant was driving towards the city where the concert was held and not away from it. Officer Cortazzo asked the defendant to step outside the vehicle. Officer Cortazzo stated that as the defendant did so, he could smell an odor

of an alcoholic beverage coming from his breath. Officer Cortazzo stated that the defendant again denied that he had been drinking. In order to verify that an alcoholic beverage was coming from the defendant's breath, Officer Cortazzo asked the defendant to say his name and keep his head forward. Officer Cortazzo testified that the defendant complied in saying his name four (4) times but kept turning his head to the side. When the defendant fully complied the fifth (5) time, Officer Cortazzo could smell an odor of alcohol on the defendant's breath. Officer Cortazzo also observed that the defendant's eyes were glassy, watery and had some redness around the rims, and that he was slow and lethargic. Officer Cortazzo stated that the defendant was belligerent the entire time.

While waiting for another officer to arrive on the scene, Officer Cortazzo put the defendant in the back of his patrol vehicle, which lasted about ten (10) minutes. When Officer Cortazzo let the defendant out of his patrol vehicle, he stated that he found a very strong odor of an alcoholic beverage emitting from the vehicle, and that his vehicle smelled like a brewery. Officer Keith Franz arrived soon after and engaged the defendant. Officer Franz testified that the defendant had a strong odor of alcohol on his breath, bloodshot eyes, slurred speech, and that he was slow to answer questions. Officer Cortazzo initially decided to write the defendant a citation, but the defendant refused to sign it before knowing what it was for. Officer Cortazzo declined to provide that information and then placed the defendant under arrest for suspicion of driving under the influence and took him to St. Joseph Medical Center for the purpose of a blood test.

Officer Cortazzo testified that he had been employed as a police officer for just over nine (9) years. He stated that his training or experience in determining if someone is under the influence of alcohol included: Training at the Reading Police Academy, on the job training while in the Field Training Officer (FTO) program, experience on the job making DUI arrests and making arrests of subjects under the influence of alcohol, and his own life experiences with alcohol, including personal consumption.

At trial, the evidence was substantially similar, with some limited inconsistencies. At trial, Officer Cortazzo went into greater detail regarding the visual indications on his vehicle and added that when he drove around the defendant and began to slow down in an effort to get the defendant to stop his car, his tapped on his brake a few times. He also added that the defendant moved back and forth a couple of times before stopping. When describing his approach to the car after the defendant had driven back to the roadblock, Officer Cortazzo added that the odor of alcoholic beverage from the car was "strong." Officer Cortazzo also added that when the defendant stepped out of his car, the defendant held onto the door. He also went into an added explanation regarding his five (5) requests to have the defendant say his name while he stood directly in front of him. Officer Cortazzo described making the numerous requests not because he continued to be unsure about the source of alcohol, but as a test of honesty, to prove a point to the defendant that he could definitely smell alcohol. Officer Cortazzo also describes the odor as "strong" after the defendant complied with his request.

Officer Cortazzo also noted at trial that when he asked the defendant questions, the defendant did not respond to all the questions he asked. Additional trial testimony from Officer Cortazzo included his ensuing request for a blood test from the defendant, which testimony was not required at the omnibus pretrial hearing. Officer Cortazzo stated that after the arrest, he transported the defendant to St. Joseph Medical Center for the purpose of getting his BAC. He testified that he read the defendant the implied consent form verbatim, after which the defendant declined to submit to the test. Officer Cortazzo stated that the defendant said that he didn't feel he had the right to submit to the test and that he didn't think he should do so under the circumstances. A noted subtraction regarding testimony at trial is that Officer Franz was never called to testify. Also, at trial, Officer Cortazzo's testimony seems to imply that the defendant only was belligerent when demanding to know what the citations were for.

## DISCUSSION

The defendant has raised three (3) separate and distinct issues for appellate review. The first claim is that this court erred by denying the defendant's motion to suppress for lack of probable cause to arrest. "Where a defendant files a motion to suppress, the burdens of production and persuasion are on the commonwealth to prove the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. West*, 834 A.2d 625, at 629 (Pa. Super. 2003), citing *Commonwealth v. Wilmington*, 729 A.2d 1160 (Pa. Super. 1999); See also Pa.R.Crim.P. 581(H). "[I]t is the sole province of the

suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented." *Commonwealth v. Santiago*, 980 A.2d 659, 664 (Pa. Super. 2009); See also *Commonwealth v. Costa-Hernandez*, 802 A.2d 671, 675 (Pa. Super. 2002); See also *Commonwealth v. Quiles*, 619 A.2d 291, 292 (Pa. Super. 1993) citing *Commonwealth v. Smith*, 577 A.2d 1387, 1388 (Pa. Super. 1990).

A probable cause evaluation is done by considering all the relevant facts under a totality of the circumstances analysis. See *Commonwealth v. Hernandez*, 935 A.2d 1275, 1284 (Pa. 2007) citing *Commonwealth v. Luv*, 735 A.2d 87, 90 (Pa. 1999) (citing *Commonwealth v. Gray*, 503 A.2d 921 (Pa. 1985)). "Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008) quoting *Commonwealth v. Dommel*, 885 A.2d 998, 1002 (Pa. Super. 2005), appeal denied, 920 A.2d 831 (Pa. 2007) (quoting *In re C.C.J.*, 799 A.2d 116, 121 (Pa. Super. 2002)). The facts must only be such that a reasonable man would believe that a crime had been committed and that the person arrested is probably the perpetrator. *Commonwealth v. Gambit*, 418 A.2d 554, 557 (Pa. Super. 1980). However, probable cause is not an overwhelming burden: "[P]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely

inference." *Commonwealth v. Cook*, 865 A.2d 869, 875 (Pa. Super. 2004) quoting *Commonwealth v. Lindblom*, 854 A.2d 604, 607 (Pa. Super. 2004).

In a DUI case, "probable cause exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of alcohol or a controlled substance." *Commonwealth v. Angel*, 946 A.2d 115, 118 (Pa. Super. 2008) quoting *Commonwealth v. Hilliar*, 943 A.2d 984, 994 (Pa. Super. 2008). This analysis includes "all facts and circumstances to be considered, not just those that suggest DUI." *Schindler v. Department of Transportation, Bureau of Driver Licensing*, 976 A.2d 601, 605 (Commw. 2009) quoting *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999). "Except in extreme cases where the overwhelming circumstances give rise to probable cause of a DUI violation, it is the ensuing interaction between the officer and the driver that yields the information that gives rise to probable cause of a DUI violation, i.e., the slurred speech, the strong odor of alcohol, the blood shot eyes, and the generally disoriented and sometimes combative nature of the driver." *Commonwealth v. Hilliar*, 943 A.2d 984, 991 (Pa. Super. 2008). "[A] police officer may utilize both his experience and personal observations to render an opinion as to whether a person is intoxicated." *Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008) quoting *Commonwealth v. Kelley*, 652 A.2d 378, 382 (Pa. Super. 1994) (citing *Commonwealth v. Bowser*, 624 A.2d 125 (Pa. Super. 1993)).

Officer Cortazzo, sitting in a marked patrol vehicle with

several visual indications, including emergency lights, observed the defendant squeeze through a roadblock and drive through a flooded roadway. Notes of Testimony, November 13, 2009, p. 4-5. Officer Cortazzo, with his emergency lights already on and utilizing his siren and fog horn intermittently, attempted to initiate a traffic stop. N.T. at p.7. When Officer Cortazzo followed the car for several moments and observed no change in speed, he went around the car and pulled in front before slowing to a stop, to which the car finally stopped. N.T. at p. 7-8.

Officer Cortazzo approached the defendant and asked him to go back to the roadblock to reposition his car. N.T. at p. 8-9. Officer Cortazzo approached the car and detected an odor of alcohol from the car. N.T. at p. 9. Since there was a passenger in the car, Officer Cortazzo asked the defendant to step outside the vehicle. N.T. at p. 9. The defendant stated that he was coming from a concert, but was driving towards the city where the concert was and not away from it. N.T. at p. 9-10. Officer Cortazzo then verified, after the defendant failed to follow his instructions four (4) times, that alcohol was coming from the defendant's breath by requesting the defendant to look at him and say his name. N.T. at p. 10. Officer Cortazzo observed that the defendant's eyes were glassy, watery and had some redness around the rims, and that he was slow and lethargic. N.T. at p. 11. Officer Cortazzo stated that the defendant was belligerent the entire time. N.T. at p. 26.

While awaiting back-up, Officer Cortazzo put the defendant in the back of his patrol vehicle, which lasted about ten (10) minutes. N.T. at p. 12. Officer Cortazzo stated that when he let the defendant out of the vehicle, he found a "very strong" odor of an alcoholic beverage

emitting from his vehicle, stating that it smelled "like a brewery." N.T. at p. 12. Officer Franz, who arrived as back-up, spoke to the defendant and stated that he had a "strong" odor of alcohol on his breath, bloodshot eyes, slurred speech, and that he was slow to answer questions. N.T. at p. 33-34. As such, the evidence is clearly sufficient to conclude that the defendant's failure to obey Officer Cortazzo's roadblock provided reasonable suspicion for him to stop the defendant's vehicle and that Officer Cortazzo had probable cause to arrest the defendant and conclude that the defendant was sufficiently impaired to the point of being incapable of safely driving.

The defendant's second claim is that the jury's finding of guilt as to the charge of general impairment is not supported by sufficient evidence. "In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the commonwealth as verdict winner, together with all reasonable inference therefrom, the trier of fact could have found every element of the crime charged beyond a reasonable doubt." *Commonwealth v. Wall*, 953 A.2d 581, 584 (Pa. Super. 2008) (citation omitted).

> In applying this standard, we bear in mind that the Commonwealth may sustain its burden by means of wholly circumstantial evidence; that the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and that the trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence. *Commonwealth v. Kennedy*, 959 A.2d 916, 921 (Pa. 2008).

"The established facts and circumstances do not have to be absolutely incompatible with the accused's innocence, but any doubt is for the factfinder unless the evidence is so weak and inconclusive that no probability of fact can be drawn from the totality of the circumstances as a matter of law." *Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003) (internal citations and quotations omitted).

The Motor Vehicle Code provides in pertinent part:

(d) General impairment.—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle. 75 Pa. C.S.A. § 3802 (a)(1).

The Pennsylvania Superior Court has stated that:

[I]t must be shown that alcohol has substantially impaired the normal mental and physical faculties required to safely operate the vehicle. Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. Evidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving. *Commonwealth v. Smith*, 831 A.2d 636, 638 (Pa. Super. 2003); see also *Commonwealth v. Kerry*, 906 A.2d

1237, 1241 (Pa. Super. 2006) quoting *Commonwealth v. Gruff*, 822 A.2d 773, 781 (Pa. Super. 2003), appeal denied, 863 A.2d 1143 (Pa. 2004); see also 75 Pa. C.S.A. § 3802 (a)(1).

This court notes that this issue has been waived, as "[a] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Charlton*, 902 A.2d 554,561 (Pa. Super. 2006) quoting *Commonwealth v. Galindes*, 786 A.2d 1004, 1013 (Pa. Super. 2001). However, even if not waived, the evidence shows several factors that indicate that the defendant was under the influence of alcohol to a degree which rendered him incapable of safely driving. The evidence shows that while Officer Cortazzo, sitting in a marked patrol vehicle with several visual indications, including emergency lights, observed the defendant squeeze through a roadblock and drive through a flooded roadway. Notes of Testimony, March 9, 2010, p. 19,25. When Officer Cortazzo, with his emergency lights already on, attempted to initiate a vehicle stop, the defendant continued to look straight ahead, even when Officer Cortazzo used his sirens and fog horn intermittently. N.T. at p. 26-27. Officer Cortazzo had to drive his car in front of the defendant and slow to a stop in front of him to get him to stop, but not before observing the defendant moving back and forth a couple times. N.T. at p. 27. The defendant initially had difficulty going back to the roadblock and Officer Cortazzo testified that the defendant appeared "very slow," and "very lethargic." N.T. at p. 29.

Upon approaching the car, Officer Cortazzo observed

a strong smell of an alcoholic beverage and asked the defendant to step out of the car. N.T. at p. 30. Officer Cortazzo testified that the defendant had to hold the door as he stepped out of the vehicle. N.T. at p. 37. Officer Cortazzo was able to smell a "strong" odor of an alcoholic beverage on the defendant's breath when the defendant finally said his name inches in from his face. N.T. at p. 31. Officer Cortazzo also observed that the defendant's eyes were "very" glassy, watery, and that there was a red ring around both eyelids and underneath the eyes. N.T. at p. 31, 37, 63. The defendant spoke "very" slowly, didn't respond to all his questions, and had a "very" lethargic demeanor. N.T. at p. 60. The defendant also stated to Officer Cortazzo that he was headed back in the city when he had said he had just come from a concert in the city. N.T. at p. 32. Officer Cortazzo found that his car "smelled like a brewery" after leaving the defendant alone in his patrol vehicle for ten (10) minutes. N.T. at p. 33. After trying to give the defendant a break, Officer Cortazzo described the defendant as "uncooperative" and "belligerent," with a cocky, arrogant, and demanding attitude. N.T. at p. 35-36. After being arrested and transported to St. Joseph Medical Center, and being read the implied consent form verbatim, the defendant declined to submit to a blood test. N.T. at 41-42.

The evidence presented with respect to the defendant's driving suggests that he was unable to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. In addition, the evidence presented with respect to his physical faculties indicates that he was under the influence of alcohol, which rendered him incapable of

safe driving. As such, the evidence is clearly sufficient to sustain the jury conviction of 3802 (a)(1).

Lastly, the defendant contends that the jury's finding of guilt as to the charge of general impairment was against the weight of the evidence. "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) citing *Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa. 1994). The Supreme Court has stated:

> The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. *Id.* at 753 quoting *Coker v. S.M. Flickinger Co., Inc.*, 625 A.2d 1181, 1185 (Pa. 1993).

When reviewing such an allegation, a trial judge does not sit as a thirteenth juror to assess the credibility of the witnesses or opine whether he would have assented to the verdict himself; rather the judge must determine that "notwithstanding all the facts, certain facts are so

clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v. Widmer,* 744 A.2d 745,752 (Pa. 2000) quoting *Commonwealth v. Brown,* 648 A.2d 1177 (Pa. 1994). Stated otherwise, a verdict will not be against the weight of the evidence unless the evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Sullivan,* 820 A.2d 795, 806 (Pa. Super. 2003) quoting *Commonwealth v. La,* 640 A.2d 1336, 1351 (Pa. 1994).

The evidence in this case, as described above, is not vague and uncertain. The verdict is not manifestly unreasonable and does not shock the conscience of this court. The defendant's appearance and conduct are sufficient facts upon which reasonable jurors could find a verdict of guilty. The evidence is clearly sufficient to find that the jury's finding of guilt as to the charge of general impairment is not against the weight of the evidence.

For the foregoing reasons this court respectfully requests defendant's appeal be denied and his judgment of sentence affirmed.